[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared. The defendant was represented by counsel. The plaintiff appeared pro se. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The plaintiff and the defendant, whose maiden name was Arel, intermarried at New London, Connecticut on November 27, 1965; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; although there were five children born to the parties, one of the sons, Billy, died at age 21; that there were no other minor children born to the defendant since the date of the marriage of the parties; that the marriage has broken down irretrievably; that there is no hope of reconciliation and that no state agency is presently contributing to the care or welfare of the parties or their children.
The defendant testified that plaintiff molested their daughter, age 7; that two children were taken from them for two years because of plaintiff's actions; that plaintiff started molesting the same daughter when she returned home; that said daughter never lived with them after that; that he told his sons Donald and Billy to get out of the marital residence; that he often abused his children; that he told his granddaughter he hated her; that the parties argued three to four times per week; that plaintiff wanted to engage in wife swapping, which defendant refused but finally agreed after continued requests by the plaintiff; that this occurred about 20 years ago; that she was afraid of the plaintiff. Defendant finally left the marital home in December 1998 and, with her daughter and granddaughter, moved in with Kathy Reynolds, plaintiff's sister.
The plaintiff claims that the breakdown of the marriage started in 1998 over the settlement of his worker's compensation claim; that he saw the defendant stealing in a store and that she told him that their first child was not his. Plaintiff denies that he has a violent temper; denies that he threatened to kill the defendant but admits he called the defendant unflattering names and swore at her. He also was acquitted of a criminal charge relative to his alleged abuse of his minor daughter. CT Page 13468-im
In May 1999, Donna Jones moved in with the plaintiff and presently lives with him in the marital home. Plaintiff claims that he was not involved with Donna Jones prior to the defendant's leaving the marital home.
Clarence Reynolds, defendant's brother-in-law, testified that plaintiff degraded the defendant on a regular basis and that plaintiff stated he would make sure that the defendant received nothing from the divorce action.
Although the evidence is conflicting, it is clear that the marriage of the parties has broken down irretrievably without any hope for reconciliation. I find that the plaintiff is more at fault for the breakdown of the marriage than the defendant.
The plaintiff, who was born on February 26, 1941, suffers from cardiomyopathy resulting from his employment at Hendel Petroleum Company in 1993. This seriously limited his ability to engage in gainful employment. He is presently receiving a non-taxable Social Security Disability of $256.00 per week and a non-taxable Teamster's disability pension which pays him $98.00 per week. At age 64 plaintiff will be entitled to a monthly benefit of $1,391.00 from his Teamster's pension.
Plaintiff instituted a worker's compensation claim for the cardiomyopathy he claims he incurred from his employment at Hendel Petroleum Company.
On April 4, 2000 the plaintiff entered into a stipulation concerning his worker's compensation claim and received $118,000.00. After paying his attorney; plaintiff netted around $94,000.00. This stipulation paid for all weekly benefits to October 5, 2003.
Since that time the plaintiff has spent approximately $72,500.00, see Defendant's Exhibit 1, without court approval notwithstanding the standing orders of the court to preserve all assets of the marriage. See plaintiff's complaint. Plaintiff claims he was unaware of such orders. He claims he spent said sum for living expenses; made a loan of approximately $16,000.00 to Donna Jones and gave $10,000.00 to Donna Jones in October 2000. It is doubtful that she will or is obligated to repay the plaintiff. CT Page 13468-in
The defendant, who was born July 3, 1946, suffers from an irritable bowel, osteoarthritis in her knees and a cyst in her liver which needs to be treated. She has a high school education.
Defendant was employed 16 to 18 years during her marriage. She is presently employed at Target and usually works between 30 and 40 hours per week. She is paid $9.70 per hour and has a net weekly income of $250.67. She also receives $100.00 per week alimony from the plaintiff. Her continued employment seems likely.
The parties own a marital home at 77 Norwich-New London Turnpike, Norwich, Connecticut subject to a mortgage. Plaintiff claims the equity in said property is $2,000.00. The defendant claims the equity in the property is $41,000.00. The other assets of the parties shall be set forth in the orders hereinafter.
After considering the pertinent Connecticut General Statutes and in light of the evidence and my findings, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is ordered that:
1. The plaintiff shall pay $1.00 per year alimony to the defendant for eight years, defendant's remarriage or death, whichever is the first to occur. Said alimony is modifiable to amount but not to term.
2. The plaintiff shall not be entitled to any alimony.
3. The defendant shall transfer to the plaintiff all her right, title and interest in 77 Norwich-New London Turnpike. He shall pay all mortgages, taxes, liens and expenses of ownership and hold the defendant harmless therefrom. The plaintiff shall pay the sum of $20,000.00 to the defendant on or before April 1, 2002.
4. The parties shall retain their respective bank accounts if any exist.
5. The plaintiff shall transfer his interest in the 1996 Chevrolet Corsica to the defendant. She shall hold the plaintiff harmless of any expenses of ownership and any loans on said automobile, if any exist.
6. The defendant shall transfer any interest she owns in the 1994 Dodge Dakota to the plaintiff. He shall hold the plaintiff harmless from all expenses of ownership and any loans on said automobile, if any. CT Page 13468-io
7. The defendant shall own her James IRA and her Minnesota Life life insurances free of any claim thereto by the plaintiff
8. The remaining personal property of the parties shall be divided by agreement of the parties. If this is not accomplished within 30 days, the parties shall select an arbitrator whose decision shall be final. The court will retain jurisdiction if the parties cannot agree.
9. Any and all future worker's compensation settlements the plaintiff may receive, from the injuries he sustained during the marriage, shall be divided equally between the parties.
10. Relative to plaintiff's Teamster Pension, the plaintiff shall elect the 75% Husband and Wife Pension Plan. See Teamster's Pension Booklet in the file. A Qualified Domestic Relations Order shall be executed to provide this benefit to the defendant. Said document shall be prepared immediately by defendant's attorney. The defendant shall be designated the survivor beneficiary of said pension if the plan permits it. Plaintiff shall cooperate with defendant's attorney in the execution of such documents.
The court will retain jurisdiction of this matter until such Order is finalized.
11. The plaintiff shall pay to the defendant 50% of the present Teamster benefits he is currently receiving.
12. The plaintiff shall contribute $3,500.00 towards the defendant's counsel fees within 30 days.
13. Each party shall be responsible for the debts listed on their respective financial affidavits and such shall hold the other harmless therefrom.
JTR Vasington